# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4821 | **DATE** | 12/15/2004 |
| **CASE TITLE** | Hess Newmark Owens Wolf, Inc. vs. Owens et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] As stated in the attached Memorandum Opinion and Order, plaintiff's motion for preliminary injunction [2-1] is denied. All exhibits and deposition testimony submitted to the Court after the hearing is admitted. Status hearing set for 1/5/05 at 9:00 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 22 2004 | |
| | Notified counsel by telephone. | | date docketed | 65 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 12/15/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| KF | courtroom deputy's initials | Date/time received in central Clerk's Office | KF mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Hess Newmark Owens Wolf Inc., )
　)
　　Plaintiff, )
　)　　No. 04 C 4821
v. )
　)
Doris Owens, Owens Group, Ltd., )
　)
　　Defendants. )　　Magistrate Judge Mason

DOCKETED
DEC 2 2 2004

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

This matter is before the Court on plaintiff Hess Newmark Owens Wolf Inc.'s ("HNOW") motion for a preliminary injunction against defendant Doris Owens ("Owens"). HNOW asks the Court to: (1) enjoin Owens, individually or through her company, Owens Group, Inc. ("OGI"), from performing any future services for HNOW competitors for a minimum of 3 years anywhere in the United States except Ohio, Kentucky, and Indianapolis, Indiana; (2) enjoin Owens, individually or through OGI, from taking any actions, including but not limited to use of HNOW's proprietary information and/or industry contacts she obtained through her employment with and ownership of HNOW, in violation of the Shareholders' Agreement and/or her fiduciary duties; and (3) enjoin Owens, individually or through OGI, from transferring, using, loaning, spending or dissipating any monies, or assets purchased with monies received from HNOW competitors for Owens' work in violation of the Shareholders' Agreement and her fiduciary duties. The Court held a five-day hearing beginning on October 26, 2004. For the reasons stated below, HNOW's motion for a preliminary injunction is denied. In rendering this decision, the Court has

considered the testimony of the witnesses, the documents admitted into evidence, the pre-hearing and post-hearing arguments and briefs of the parties and the relevant case law. Pursuant to Fed. R. Civ. P. 52, we make the following findings of fact and conclusions of law.

## FINDINGS OF FACT[1]

*Formation of HNOW*

In January 1998, Mary Hess, Doris Owens, Barry Newmark, Stuart Wolf and Sherman Wolf formed HNOW, an Illinois corporation. HNOW provides advertising and/or publicity and promotional services to various major motion picture studios. On January 16, 1998, the aforementioned individuals executed a Shareholders' Agreement ("the Agreement") detailing among other things, share allocations, share values, dividend rights and corporate officers. Hess, Newmark, Owens and Stuart Wolf (sometimes referred to as "the HNOW principals") each received 22.5% of HNOW's shares while Sherman Wolf received 10% of the shares. Newmark was appointed President of HNOW, Owens and Hess were named as Vice-Presidents and Stuart Wolf was named Vice-President, Secretary and Treasurer.

The Agreement also includes detailed restrictions on shareholders from competing with and/or soliciting clients of HNOW. The pertinent provisions in ¶ 7 of the Agreement are as follows:

    (A)    <u>Covenant Not to Compete</u>. Except as set forth herein, each Shareholder agrees that so long as he or she is a Shareholder and for a period of three years thereafter, he or she will not, directly or indirectly, engage in (whether

---

[1] The following are the Court's findings of fact that are relevant to the issuance or denial of HNOW's motion for a preliminary injunction.

2

as an employee, consultant, proprietor, partner, director or otherwise), or have any ownership interest in, or participate in the financing, operation, management or control of, any person, firm, corporation or business that engages in a "Restricted Business" anywhere within the "Restricted Territory" (as such terms are defined below). It is agreed that passive ownership of no more than five percent (5%) of the outstanding voting or profits interest of any publicly held entity or business shall not in and of itself constitute a violation of this provision.

(B) Covenant Not to Solicit. Except as set forth herein, each Shareholder agrees that so long as he or she is a Shareholder and for a period of three years thereafter, he or she will not: (i) solicit, recruit, hire, encourage or take any other action which is intended to induce any employee or customer of the Corporation to terminate its, his or her employment or business relationship with the Corporation; and (ii) interfere in any manner with the business, contractual or employment relationship between the Corporation and any such employee or customer of the Corporation.

(C) Restricted Business. The term "Restricted Business" shall mean any business, firm, operation or agency performing movie-related advertising or promotions.

(D) Restricted Territory. The term "Restricted Territory" shall mean any market area or any county, parish, territory or similar division of any state in the United States where the Corporation markets, advertises or promotes the business of its customers or is otherwise doing business or plans to market, advertise or promote the business of its customers or otherwise do business in the three years after such termination, as evidenced by any written document or discussion by the Board of Directors memorialized in the minutes of its meetings.

(F) Reasonableness of Covenant. Each Shareholder represents that he or she is familiar with the covenants not to compete and not to solicit contained herein and is fully aware of his obligations hereunder and agrees that the length of time, scope and geographic coverage of these covenants is reasonable given the benefits received by him or her hereunder.

Additionally, the Agreement specifically recognizes that at the time the Agreement was executed, Owens operated OGI independently of HNOW. As a result, the Agreement allows OGI and Owens to "continue to provide movie-related advertising to markets in Ohio and Kentucky, except for MGM and Warner Bros.," and "movie-related promotions" for any

3

clients in Ohio, Kentucky and Indianapolis.

*HNOW's Attempts to Become a National Agency*

Since the formation of HNOW, its principals recognized the need to become a super-agency or national agency to remain competitive in the industry. Initially, the plan was for HNOW to become the dominant agency in the Midwest and then expand to become a national agency. Owens was supposed to be the main salesperson or rainmaker for HNOW because of her extensive movie studio contacts. Indeed, Owens had been handling publicity and promotional work for the film industry for more than twenty years before the formation of HNOW.

However, over a period of several years, Hess, Newmark and Stuart Wolf had problems with Owens' compensation structure and her contribution to the company. Sometime in 2000 or early 2001, Hess, Newmark and Wolf discussed their concerns about Owens' role in the business. In order to promote HNOW's plan to become a national agency, they offered Owens a different compensation package based on incentives for bringing in business. In the fall of 2001, they suggested a change to Owens' compensation and when she refused, Hess, Newmark and Wolf offered to purchase Owens' shares to resolve these continuing issues. Owens rejected the offer.

During 2000 and early 2001, the HNOW principals began discussing the threat to the ongoing viability of HNOW as a result of the trend of consolidation in the advertising industry, *i.e.*, the studios began using national advertising agencies rather than regional agencies like HNOW. The HNOW principals recognized that Allied Advertising ("Allied") and Terry Hines Associates ("THA") were becoming or were already the type of national agencies the studios wanted to employ for their advertising, publicity and promotional

needs. At a shareholders' meeting in January 2001, the HNOW principals, including Owens, discussed the need to expand nationally and to become more like Allied. After the shareholders' meeting, and throughout 2001, HNOW engaged in discussions with three other regional agencies to join together to form a national agency.[2] However, the combined national agency never came to fruition.

*The Allied Deal*

In late 2002, early 2003, HNOW looked into alternative methods of surviving the consolidation trend in the industry.[3] Specifically, on December 16, 2002, the HNOW principals met with Allied's chief executive, Gerry Feldman, to discuss Allied's interest in acquiring HNOW or forming a joint venture with HNOW. Similarly, on January 31, 2003, the HNOW principals met with THA's chief executive, Grant Nemirow, to discuss THA's interest in acquiring HNOW or forming a joint venture with HNOW. Ultimately, THA was not interested in HNOW.

In April 2003, Allied made an offer to purchase HNOW. The HNOW principals voted to accept the proposal from Allied in September 2003. However, the Allied deal was not complete at this juncture because the parties still needed to negotiate an employment agreement for Newmark and Stuart Wolf and confidentiality and non-competition agreements for all of the HNOW shareholders. By March 2004, Owens' negotiation of her

---

[2] An agency needs a presence in New York and Los Angeles to become what is known as a "national agency." Both Allied and THA have had a presence in New York and Los Angeles since 2002 at the latest. As part of the efforts to form the combined agency, HNOW looked into opening an office in Los Angeles. However, there is no evidence that HNOW ever made efforts to open a New York office.

[3] Additionally, in October 2002, Newmark proposed to buy out the other HNOW principals because he thought HNOW was not realizing its growth potential. Newmark's proposal was not accepted by any of the shareholders.

5

non-compete with Allied was complete. Additionally, by June 2004, Allied and HNOW had agreed on the terms of the Business Purchase Agreement. Allied and HNOW still needed to exchange certain financial information, work out the terms of employment agreements for Stuart Wolf and Newmark and complete the terms of a non-compete for Sherman Wolf.

*Owens' Work for THA*

In late May or June 2004, Hess and Newmark began hearing rumors in the industry that Owens was working for THA, a competitor of HNOW and Allied. Specifically, in late May or June 2004, Newmark learned from Gerry Feldman at Allied that Owens was working for THA. It is unclear whether Newmark immediately shared this information with Hess and/or Stuart Wolf. Newmark did not contact Owens to ask her whether she was working for THA. In mid-June 2004, while at a press junket, Newmark learned from another Allied employee that Owens was working for THA. When he returned from the press junket the next day, Newmark relayed this information to Hess and Wolf. Also, on June 14, 2004, Hess learned from Tracy Uri, a HNOW employee, that Owens was helping THA open offices. Hess did not recall whether she and Newmark had discussed Owens' work for THA prior to her conversation with Ms. Uri.

On June 23, 2004, Newmark and Hess met Owens for a previously scheduled lunch meeting. During the lunch, Newmark and Hess confronted Owens about her work for THA. Owens admitted that she was doing consulting work for THA for its East Coast markets, at which time, Newmark left. Hess told Owens, "you're so fired."

On July 6, 2004, HNOW's Board of Directors held a Special Meeting pursuant to notice. The meeting was held despite the fact that Owens' counsel advised HNOW that Owens was unable to attend the meeting due to a scheduling conflict. At the July 6, 2004

6

meeting, Hess, Newmark and Stuart Wolf discussed Owens' activities on behalf of THA.

On July 15, 2004, HNOW's Board of Directors held a Special Meeting which all directors, including Owens, attended. At that meeting, Owens admitted that she had been performing consulting services for THA since late August or September 2003. Owens admitted that her activities for THA included setting up publicity and promotional offices for THA in several East Coast cities. Owens indicated that she did not intend to cease these activities and that she did not believe her activities violated any of her contractual or other duties to HNOW. At the July 15, 2004 meeting, the HNOW Board of Directors voted to terminate Owens and remove her as an officer and director of HNOW.

*Effects of Owens' Work for THA*

Within days of the July 15, 2004 board meeting, Newmark learned from Feldman that the Allied-HNOW deal was on hold as a result of the Owens situation. Joseph Matzkin, counsel for Allied, also confirmed that the Allied-HNOW is on hold.[4] According to Matzkin, Allied is awaiting a determination in this action to see how it will impact the Allied-HNOW deal. However, Matzkin testified that he has never heard that the Allied-HNOW deal is off and that his instructions from Allied with respect to the deal have not changed. Furthermore, since Allied learned of Owens' work for THA, the parties have continued to exchange financial information relevant to the deal. In particular, Newmark provided Feldman with HNOW financial information.

Despite the fact that the Allied-HNOW deal is still pending, Hess, Newmark and Wolf claim that Owens' work for THA will harm HNOW. However, HNOW has not lost any

---

[4] Matzkin, who represents Allied in the negotiations relating to Allied's purchase of HNOW, voluntarily testified at the hearing at HNOW's request.

business to THA since Owens began working there. Owens has not solicited and is not soliciting movie-related advertising or promotional business for THA. Instead, Owens' work for THA involved setting up and staffing THA's publicity and promotional offices on the East Coast. She was retained by THA at the request of a Dreamworks executive, Mike Vollman. By July 2004, all of the offices Owens help set up and staff for THA were open. Owens now has ongoing input on how the offices are run in order to ensure their success. Owens has no role in obtaining business for THA. Since THA hired Owens, she has not been involved in any THA pitch and she has not assisted in preparing any THA pitch.

Newmark and Stuart Wolf also testified that Owens possesses confidential information, such as HNOW's pricing information, that she will use to HNOW's detriment. However, Wolf admitted that Owens set the prices for HNOW because she had the relationships with the clients and she had more than twenty years experience in the industry. Wolf also admitted that HNOW has no knowledge that Owens disclosed any HNOW confidential information to THA. Further, some studios, such as Dreamworks, set non-negotiable fees for the agencies they retain, making the pricing information Owens possesses irrelevant. The evidence supports the conclusion that the pricing information Owens possesses as well as her studio contacts are a result of Owens' years of experience in the industry.

**CONCLUSIONS OF LAW**

In order to obtain a preliminary injunction, a party must show: 1) some likelihood of success on the merits; 2) that no adequate remedy at law exists; and 3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001), citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th

Cir. 1992. If the moving party cannot establish any one of these prerequisites, the court's inquiry is over and the injunction must be denied. *Abbott Labs.*, 971 F.2d at 11. On the other hand, if "the court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Ty, Inc.*, 237 F.3d at 895. Last, the court considers whether and how the public interest will be affected if the injunction is granted or denied. *Id.* The court then weighs all of these factors in determining whether to grant the injunction. *Id.*

**Likelihood of Success on the Merits**

In order to demonstrate a likelihood of success on the merits, HNOW must show that it has a better than negligible chance of success on the merits of its claim. *See Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). Here, HNOW has alleged three claims against Owens: breach of the Agreement; breach of Owens' fiduciary duty of loyalty; and breach of Owens' fiduciary duty to refrain from usurping corporate opportunities.

### 1. Breach of the Agreement

HNOW contends that Owens' work on behalf of THA violates the covenant not to compete and the covenant not to solicit provisions in ¶¶ 7(A) and 7(B) of the Agreement. With respect to the covenant not to solicit, there is no evidence that Owens has solicited or is soliciting business on behalf of THA. Therefore, the Court finds that HNOW has not established a better than negligible chance of success on the merits of its claim for breach of the covenant not to solicit.

9

With respect to the covenant not to compete, it prohibits Owens from working for any entity that engages in movie-related advertising and promotions in a restricted territory, *i.e.*, anywhere that HNOW markets, advertises or promotes the business of its customers. In particular, both THA and HNOW advertise and promote on behalf of studios in Chicago. Therefore, THA engages in restricted business in a restricted territory. As a result, the covenant prohibits Owens from working as a consultant for THA regardless of where the consulting work is done.[5] Because Owens admits to working as a consultant for THA, HNOW appears to have a better than negligible chance of success on the merits of its claim for breach of the covenant not to compete. This, however, assumes that the covenant is enforceable.

The validity and enforceability of the covenant not to compete relates to the likelihood of success because if the covenant is invalid and unenforceable, HNOW has no likelihood of success. The question of whether a restrictive covenant is enforceable or not is a question of law. *Liautaud v. Liautaud*, 221 F.3d 981, 986 (7th Cir. 2000). The enforceability of such covenants centers on their reasonableness. *Dunning v. Chemical Waste Management*, Inc., 1993 U.S. Dist. LEXIS 10620, *14 (N.D. Ill. 1993). Under Illinois law, it is improper to enforce a covenant not to compete merely because the parties agreed to such an arrangement. *Advent Elecs. v. Buckman*, 112 F.3d 267, 274 (7th Cir. 1997).

The initial issue is to determine whether the covenant not to compete is ancillary to the sale of a business or ancillary to an employment contract. Courts evaluate covenants that appear in employment contracts differently than covenants that appear in contracts

---

[5] Based on ¶7(G)(iv), Owens could work for THA in Kentucky, Ohio and Indianapolis.

for the sale of a business because of the difference in the nature of the interests sought to be protected. *Central Water Works Supply, Inc. v. Fisher*, 240 Ill. App. 3d 952, 956, 608 N.E.2d 618, 621 (4th Dist. 1993). Courts impose a more stringent test of reasonableness on restrictive covenants in employment contracts than they do on restrictive covenants ancillary to the sale of a business. *Id.*

HNOW argues that the covenant not to compete in the Agreement is more analogous to a covenant which is ancillary to the sale of a business. We agree. As in *Central Water Works*, we find that the covenant not to compete was included in the Agreement as evidence of the shareholders' loyalty and commitment to HNOW and each other and to ensure that they would not do anything to hinder the success of the company. 240 Ill. App. 3d at 958. Furthermore, unlike a covenant ancillary to an employment agreement, here, the shareholders had equal bargaining power when they entered into the Agreement. Accordingly, we conclude that this covenant is more analogous to a covenant not to compete which is ancillary to the sale of a business.

To enforce such a covenant, HNOW must show: (1) a protectable business interest that has been injured by his Owens' conduct; and (2) that the restriction is reasonable as to time,[6] geographical area and scope of prohibitive business activities. *Id.* Here, HNOW has a protectable business interest in ensuring the success of the company. *Id.* Furthermore, the evidence presented at the hearing supports the conclusion that, from the outset, the HNOW shareholders recognized the need to expand nationally. Therefore, we find that the nation-wide geographic restriction is reasonable to protect HNOW's business

---

[6] Owens does not challenge the three-year limitation contained in the covenant. Courts have upheld durational restrictions of three years. *Central Water Works*, 240 Ill. App. 3d at 958.

11

interest.

Nevertheless, we find that the covenant's scope of prohibited business activities is unreasonable. The restrictions in the covenant not to compete must not be greater than necessary to protect HNOW. See Dunning, 1993 U.S. Dist. LEXIS 10620, *14. Here, assuming the covenant is enforceable, it prohibits Owens from engaging in *any type of work* for THA anywhere (other than Kentucky, Ohio and Indianapolis). Such a wide scope of prohibited activities is unreasonable where, as here, HNOW has failed to demonstrate that Owens' consulting work for THA caused it any injury. In particular, we find that HNOW has failed to show that Owens has any confidential information. Moreover, HNOW has not lost any business to THA since Owens started her consulting work. The fact that Owens engaged in a prohibited activity and HNOW did not suffer any injury to its protectable interest indicates that the restriction is greater than necessary to protect HNOW and not reasonable in light of the interest HNOW seeks to protect.[7] Because we find that the scope of prohibited activities is unreasonable, the covenant not to compete is unenforceable as drafted. Consequently, HNOW has not established a better than negligible chance of success on the merits of its claim for breach of the covenant not to compete.

### 2. Breach of Owens' Fiduciary Duty of Loyalty

HNOW argues that Owens breached her fiduciary duty of loyalty because: (1) she

---

[7] A more limited covenant which prohibits shareholders from engaging in movie-related advertising and promotional work for an entity that engages in restricted business in a restricted territory would be reasonable in light of HNOW's protectable interest. We feel it unnecessary to "blue-pencil" the covenant here, however, because as discussed below, HNOW has failed to show irreparable harm. See Joy v. Hay Group, Inc., 2003 U.S. Dist. LEXIS 16045, *34 (N.D. Ill. 2003) (recognizing that the blue pencil doctrine allows the court, at its discretion, to modify or "blue pencil" unreasonable terms of an agreement in order to make it reasonable).

12

failed to disclose to the other HNOW shareholders that she was working for THA; and (2) her work for THA was against the best interest of HNOW. Under Illinois law, a shareholder in a close corporation owes a duty of loyalty to the corporation and to the other shareholders. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 (7th Cir. 1995), citing *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 557 N.E.2d 316, 323 (2nd Dist. 1990). Shareholders must "deal with the utmost good faith, fairly, honestly, and openly with their fellow" shareholders. *Rexford*, 58 F.3d 1219. Around the same time that the HNOW shareholders voted to accept Allied's proposal to purchase HNOW, Owens began working for THA. THA is a competitor of both HNOW and Allied. Owens failed to inform her fellow shareholders of her work for THA until they confronted her nine months later, in June 2004. Clearly, Owens was not open about her work for THA and it is questionable whether she acted in good faith when she voted to accept the Allied proposal and either simultaneously or shortly thereafter, began working for a competitor of Allied and HNOW. Accordingly, the Court finds that HNOW has a better than negligible chance of success on the merits of its breach of fiduciary duty of loyalty claim against Owens.

### 3. Breach of Fiduciary Duty to Refrain From Usurping Corporate Opportunities.

A corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage. *Carlstead v. Holiday Inns, Inc.*, 1986 U.S. Dist. LEXIS 19302, *33 (N.D. Ill. 1986), citing *Peterson Welding Supply Co., Inc. v. Cryogas Products, Inc.*, 126 Ill. App. 3d 759, 467 N.E.2d 1068 (1st Dist. 1984). Contrary to Owens' suggestion, the corporate opportunity here was not obtaining the Dreamworks East Coast business.

Rather, it was assisting THA set up its East Coast offices. Dreamworks wanted Owens to assist THA in setting up and staffing the East Coast offices because Owens knew the Dreamworks account and understood Dreamworks' needs. Because Dreamworks wanted Owens to assist THA, Owens could have presented this opportunity to HNOW and actually assisted THA through HNOW (instead of through OGI). Thus, the Court finds that HNOW has a better than negligible chance of success on the merits of its usurping corporate opportunity claim.

**Irreparable Harm**

Because HNOW has established a likelihood of success on the merits of its breach of fiduciary duty claims, we now address whether HNOW has established irreparable harm. In determining whether HNOW has shown irreparable harm if the injunction is not granted, we are mindful of the purpose of a preliminary injunction; to preserve the relative position of the parties until a permanent injunction can be issued or there is a trial on the merits. *Meridian Mutual Ins. Co. v. Meridian Ins. Group Inc.*, 128 F.3d 1111, 1119 (7th Cir. 1997).

With respect to both breach of fiduciary duty claims, we find that HNOW has failed to show that it will suffer irreparable harm absent injunctive relief. Significantly, HNOW has not lost any business to THA since Owens started consulting for THA. HNOW's suggestion that Owens has a role in obtaining business for THA is simply not supported by the evidence. HNOW argues that it will suffer harm because it cannot expand its markets or merge with existing national firms if Owens continues to work for THA. However, despite the fact that the Allied-HNOW deal is on hold, there is no evidence to suggest the deal will go forward if Owens is enjoined or that the deal will die if Owens is not enjoined. Furthermore, HNOW has offered no evidence at all to support its contention that

HNOW's opportunity to merge with THA was thwarted by Owens' agreement to work for THA independently. To the contrary, despite Owens' best efforts, THA was never interested in purchasing HNOW.

HNOW also contends that its ability to expand is hindered because Owens has confidential information and critical contacts which she continues to use to HNOW's detriment. We do not agree. Based on the evidence before us, we find that HNOW has not established that Owens has any confidential information.[8] Instead, the pricing information Owens possesses as well as her contacts are a result of Owens' twenty-plus years in the industry. Moreover, HNOW has no presence in New York or Los Angeles, which is clearly what hinders its ability to expand and become a national agency. Thus, despite the fact that Owens may be in breach of her fiduciary duties, HNOW has not shown that irreparable harm will result if Owens continues to consult for THA pending a trial on the merits.

Additionally, assuming for the moment that HNOW was able to establish a likelihood of success on the merits of its breach of contract claim, HNOW's motion still fails. HNOW argues that an ongoing violation of an enforceable covenant not to compete creates sufficient irreparable harm which makes the issuance of a preliminary injunction follow "as a matter of course." However, unlike here, in each case HNOW relies on, the plaintiff demonstrated that irreparable harm would result unless an injunction was issued. *See Central Water Works*, 240 Ill. App. 3d at 956 (recognizing that the loss of customers and

---

[8] Because HNOW failed to establish that Owens possesses any confidential information, the inevitable disclosure doctrine is inapplicable. *See Pepsico Inc, v. Redmond*, 54 F.3d 1262, 1269-70 (7th Cir. 1995).

15

the threat of the continuation of such loss to a legitimate business interest is sufficient to show that plaintiff will suffer irreparable injury unless protected by the court); *McRand, Inc. v. Van Beelan*, 138 Ill. App. 3d 1045, 486 N.E.2d 1306 (1st Dist. 1985) (finding immediate harm where defendants set up a corporation to compete with plaintiff while still working for plaintiff and later solicited plaintiff's customers); *O'Sullivan v. Conrad*, 44 Ill. App. 3d 752, 358 N.E.2d 926 (5th Dist. 1976) (plaintiff showed a loss of customers when defendant opened optical business within a restricted territory in violation of a non-compete ancillary to the sale of a business).

As detailed above, HNOW has not demonstrated that irreparable harm will result if Owens is allowed to continue consulting for THA pending a trial on the merits. HNOW has not lost any business as a result of Owens' conduct nor does Owens have any HNOW confidential information to pass onto THA. Furthermore, HNOW failed to offer any evidence that the Allied-HNOW deal will not go forward if the preliminary injunction is denied. Therefore, we find that any potential harm to HNOW is speculative. *See Cervantes v. Perryman*, 954 F. Supp. 1257, 1262 (N.D. Ill. 1997) (recognizing that there must be a clear need for the injunctive relief to prevent some irreparable harm and the likelihood of injury must be real, not speculative). Accordingly, HNOW is not entitled to a preliminary injunction.

**Inadequate Remedy at Law, Balance of Harms**

Because HNOW has failed to demonstrate irreparable harm, the Court does not need to determine whether there is an adequate remedy at law, balance the potential harm to Owens or consider how the public interest will be affected. *See Abbott Labs.*, 971 F.2d

at 11 (recognizing that if the moving party cannot establish any one of the elements needed to obtain a preliminary injunction, the court's inquiry is over).

## CONCLUSION

For the reasons stated above, HNOW's motion for a preliminary injunction is denied. It is so ordered.

                                                **ENTER:**

                                                **MICHAEL T. MASON**
                                                **United States Magistrate Judge**

**Dated:**        December 15, 2004